# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Richard Scott Jongeward, )
    Petitioner, ) CV-08-562-PHX-GMS (JJM)
)
vs. ) **REPORT & RECOMMENDATION**
)
Charles Ryan, et al., )
    Respondents. )

Petitioner Richard Scott Jongeward, presently incarcerated at the Great Plains Correctional Facility, Hinton, Oklahoma, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of the Court, this matter was referred to Magistrate Judge Marshall for Report and Recommendation.[1] Before the Court are the Petition (Doc. No. 1), Respondents' Answer (Doc. No. 26)[2] and Petitioner's Reply (Doc. No. 16). The Magistrate Judge recommends the District Court, after its independent review of the record, dismiss the petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Arizona Court of Appeals, in Petitioner's direct appeal, described the facts and procedural history of Petitioner's conviction as follows:

---

[1] On September 9, 2009, the District Court issued an order consolidating Case No. CV 08-0562-PHX-GMS and Case No. CV 09-1252-PHX-GMS, with Case No. CV 08-0562-PHX-GMS as the lead case (Doc. 23). This Report and Recommendation addresses the claims originally raised in Case No. 09-1252-PHX-GMS. The claims originally raised in Case No. 08-0562-PHX-GMS are addressed by separate Report and Recommendation.

[2] The Answer is docketed in case number CV 09-1252-PHX-GMS (JM).

In the late evening of November 6, 2002, Maricopa County Sheriff's Deputy Clinton Doyle was riding in his patrol car along with two civilian crew members from the television show "COPS" when he saw a car apply its brakes in an effort to avoid hitting a bicyclist, later identified as Jongeward. The crew turned on the camera lights and commenced recording the events that followed. [FN2: Deputy Doyle testified that the camera lights helped him better see Jongeward that evening.] Deputy Doyle activated his emergency lights and attempted to stop Jongeward for failing to yield the right of way. Jongeward continued to ride his bicycle, but eventually stopped.

After Deputy Doyle made contact with Jongeward, the latter confirmed his identity by producing an Arizona identification card. [FN3: Shortly after the initial contact, the film crew discontinued filming.] Deputy Doyle then requested Jongeward to empty his pockets and Jongeward complied. Because Jongeward behaved in a suspicious manner, Deputy Doyle performed a "safety pat down" of Jongeward and noticed a bulge in the front portion of Jongeward's pants. Upon questioning, Jongeward admitted that he had a gun and that it was loaded. Deputy Doyle then placed Jongeward in handcuffs and retrieved the weapon from Jongeward's pants.

Without being questioned, Jongeward admitted to Deputy Doyle that he was using the gun for protection. According to Deputy Doyle, Jongeward additionally admitted that he was not supposed to have the gun. After impounding the weapon, Deputy Doyle conducted a records check that substantiated the validity of Jongeward's identification card. Deputy Doyle then released Jongeward and informed him that the matter would be submitted to the county attorney's office for review and possible charges. Deputy Doyle then concluded his contact with Jongeward in order to respond to other calls.

On April 16, 2003, the State charged Jongeward with misconduct involving weapons while being a prohibited possessor, a class 4 felony, in violation of A.R.S. §§ 13-3101 and 13-1102 (2001). Deputy Doyle identified Jongeward during the preliminary hearing.

A jury trial began on March 29, 2004. Although present for most of the trial, Jongeward did not appear for the verdict. The court found Jongeward's absence to be voluntary, entered the verdict of guilty, and conducted a hearing *in absentia* on the State's allegations of prior convictions. The trial court found that the State had proved beyond a reasonable doubt that Jongeward had been convicted on December 19, 1997 of forgery and negligent homicide, both class 4 felonies, which qualified as historical prior convictions.

Jongeward was arrested on a bench warrant on April 20. On September 23, the trial court reiterated its finding that the State had proved beyond a reasonable doubt that Jongeward had two historical prior convictions and sentenced Jongeward to a mitigated term of 8 years' imprisonment with credit for 156 days

served.

(Ex. BBB, pp. 3-4.)[3]

On November 18, 2004, Petitioner filed a notice of post-conviction relief. (Ex. VV-WW.) With Petitioner's consent, his appellate attorney obtained a dismissal without prejudice of the proceeding until the completion of the direct appeal. (Ex. XX.)

Petitioner's appellate attorney's review of the record revealed "no arguable question of law that is not frivolous" and filed an opening brief under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). (Ex. YY.) Despite counsel's conclusion, Petitioner requested that she raise the following issues:

1. Mr. Jongeward was identified only in court and the deputy was never asked to identify him in a lineup.

2. His lawyer never admitted evidence that, while he was in prison, someone had been using his identification and the police issued traffic tickets against him. That same person was the likely culprit in this offense as well.

3. The "Cops" videotape was destroyed though it contained a photograph of the actual perpetrator.

4. He had witnesses that were never presented that would testify that he was twenty miles away when this happened.

5. The police never checked the gun for fingerprints.

6. The state violated Mr. Jongeward's right to Due Process of law.

7. The police officer lied when he identified Mr. Jongeward as the perpetrator.

(*Id.*, p. 7.)

On June 1, 2005, Petitioner filed *pro se* a supplemental brief in which he argued that only one, rather than two, of his prior convictions constituted a sentence-enhancing historical prior felony conviction; that evidence was ignored regarding the videotaping of the incident; and questioning why Officer Doyle did not arrest the suspect. (Ex. ZZ.)

---

[3] Unless otherwise noted, all referenced exhibits are those attached to Respondent's Answer to Petition for Writ of Habeas Corpus.

3

On July 28, 2005, the Arizona Court of Appeals filed its memorandum decision in which it affirmed the conviction. (Ex. BBB.) In the decision, the Court of Appeals declined to address Petitioner's claims of ineffective assistance of counsel on direct appeal, found that the State was not obligated to lift fingerprints from the gun, found that the Deputy Doyle's in-court identification was not unduly suggestive, found that it was the jury's function to determine the credibility of Deputy Doyle's identification, found that the record did not reflect that the State had obtained or destroyed the videotape, and found that the trial court properly considered Petitioner's two prior convictions at sentencing. (*Id*., pp. 5-13.)

On August 19, 2005, Petitioner filed his second application for post-concision relief. (Ex. DDD.) Petitioner alleged that newly discovered facts would probably have changed the verdict and that facts existed showing that he was actually innocent. (*Id*.) In support of his claims, Petitioner asserted that he possessed a sworn and notarized statement from witnesses who his lawyer did not allow to testify, that someone else was using his information during the time period when the incident occurred, that his lawyer never asked whose fingerprints were on the gun, and that Petitioner was 20 miles away during the contact between Deputy Doyle and the unknown suspect. (*Id*., p. 3.) Petitioner attached two sworn and notarized affidavits that claimed that Petitioner was not at the location of the incident. (Ex. DDD).

On September 2, 2005, counsel was appointed to represent Petitioner in his second PCR. (Ex. DDD (last two pages).) Petitioner's appointed counsel sought an extension of time to file a counseled post-conviction petition because her investigator was "still completing interviews of potential alibi witnesses who may provide useful information concerning petitioner's claims." (Ex. FFF.) The trial court granted the motion. (Ex. GGG.)

On November 30, 2005, appointed counsel filed a Notice of Completion of Post-Conviction Review by Counsel notifying the trial court as follows:

> Counsel for petitioner, having corresponded and spoken with petitioner, interviewed former trial counsel, investigated petitioner's claims of "newly discovered evidence" and "alibi" through investigator, Jon Craig, and reviewed the entire court's file including all relevant transcripts, is unable to find a tenable issue to submit to the court pursuant to Rule 32, *Arizona Rules of Criminal Procedure*. Consequently, counsel is not filing a Petition for Post-Conviction Relief.

4

(Ex. HHH). The trial court granted an extension of time for Petitioner to file his own petition. (Ex. III.)

On December 27, 2005, Petitioner filed a *pro per* supplemental petition for post-conviction relief in which he argued that his right to due process was violated through the identification of Petitioner as the perpetrator of the crime, his counsel and the trial court prevented him from submitting witness names for testimony, the deputy's in-court identification was wrong when the deputy stated that Petitioner's beard looked the same, ineffective assistance of appellate counsel, and the absence of fingerprints on the gun (Ex. LLL.)

In response to Petitioner's arguments, the State argued that the identification issue was precluded by the court of appeals having already rejected it on direct appeal, and that the issue relating to submitting the list of witnesses was precluded by Petitioner's failure to raise the issue on direct review. (Ex. MMM, pp. 3-5.) In response to Petitioner's ineffective assistance claim that he was prejudiced due to his counsel's failure to call certain witnesses, the State submitted an affidavit from Petitioner's trial counsel in which counsel stated that Petitioner never provided the names of any witnesses during their preparation for trial:

> I read the allegations of ineffective assistance of counsel raised by my former client, Richard Jongeward, in CR2003-033208-001SE. Mr. Jongeward alleges that I failed to present witness testimony. His petition includes the names of alibi witnesses that my former client claims were disclosed to me.
>
> 1. Mr. Jongeward did not provide the names or any witness to me. I met on numerous occasions with Mr. Jongeward to discuss his case and prepare for trial. During the initial stages of my representation, we agreed to file a motion to suppress based on an unlawful seizure. Mr. Jongeward provided detailed information about the location, date, time and circumstances surrounding the stop. He disagreed with significant facts about the stop, including lightning [sic] condition, direction and speed of his travel and the sequence of events that occurred after the stop. He assisted me in preparing the pleadings and in conducting the evidentiary hearing. At this stage of the proceedings, Mr. Jongeward was actively involved in challenging the legality of the stop. He did not bring up any witness information and did not disclose alibi or any other defense.
>
> 2. My investigation of the case was thorough and complete. I met with Mr. Jongeward and discussed all aspects of his case;

> conducted a thorough interview of the arresting officer, filed appropriate motions, including a motion to suppress. An investigator was appointed to assist in any pretrial investigations and would have contacted witnesses on my behalf had they been disclosed. I also scheduled a settlement conference. In short, I had the time and resources available to investigate this case and to prepare for trial. His allegation that I did not have time for his case is groundless.
>
> In short, neither my investigator nor I were informed of any witnesses and I did not receive names or addresses which now are being disclosed by Mr. Jongeward.

(Ex. MMM, attachment B.)

Petitioner replied that his attorney "should have requested a line-up procedure if there was a question of mistaken identity," that he would not have been convicted if the jury had seen the Cops video, and that his counsel was ineffective by failing to obtain the videotape and the State violated its discovery duties by not disclosing the tape. (Ex. NNN.)

On April 5, 2006, the trial court, finding "[n]o colorable claim having been made and no good cause appearing," dismissed the petition for post conviction relief. (Ex. OOO.) On April 26, 2006, Petitioner filed a motion for extension of time to file a petition for review in the Arizona Court of Appeals. (Ex. PPP.) The trial court never ruled on the motion.

Then, on May 8, 2006, Petitioner filed a delayed petition for review in the Arizona Supreme Court to review the Arizona Court of Appeals memorandum decision on direct review. (Ex. QQQ.) He also filed a motion in the appellate court for permission to do so. (Ex. RRR.)  On May 22, 2006, the court of appeals denied Petitioner motion for permission to file a delayed petition for review by the Arizona Supreme Court. (Ex. UUU.)

Despite the trial court not ruling on Petitioner's motion for extension of time to file a petition for review of the denial of his petition for post conviction relief, on May 16, 2006, Petitioner nevertheless filed his petition for review. (Ex. SSS.) That same day, Petitioner filed a motion to supplement the petition for review with additional documentation. (Ex. TTT.)

On May 23, 2006, Petitioner filed a "Motion-Request for Transcribing of the 'Witness Prelim' Hearing." (Ex. VVV.) The trial court apparently construed the motion as a request for preparation of post-conviction relief record and denied the request because no notice of

post conviction relief was pending. (Ex. WWW.) The Arizona Court of Appeals then dismissed the petition for review on the ground that permission to file an untimely petition for review needed to be granted by the trial court. (Ex. XXX.)

In his direct review proceedings, Petitioner then filed a state habeas petition in the Arizona Supreme Court. (Ex. YYY.) He also filed a motion in the trial court to file a delayed petition for review in the court of appeals. (Ex. ZZZ.) He then filed a petition for review in the court of appeals to review the trial court's dismissal of his post conviction petition. (Ex. AAAA.) On July 21, 2006, the Arizona Court of Appeals dismissed the untimely petition for review because the permission needed to be granted by the trial court. (Ex. BBBB.)

On September 5, 2006, Petitioner filed another post conviction application in the trial court. (Ex. CCCC.) The trial court dismissed the post conviction proceeding for failure to provide meritorious reasons to pursue an untimely post conviction proceeding. (Ex. DDDD.) Petitioner then filed a motion to compel in the trial court seeking additional evidence. (Ex. EEEE.)

On May 21, 2007, Petitioner filed another Petition for Post-Conviction Relief. (Ex. GGGG.) The trial court dismissed the petition on the grounds that all of the issues were raised on appeal or in prior Rule 32 proceedings and because Petitioner did not raise a colorable claim of newly discovered evidence or actual innocence. (Ex. HHHH.) Petitioner then filed a Notice of Filing of Petition for Review of Petition for Post-Conviction Relief to the Arizona Court of Appeals and a Motion for Transcripts or Initial Appearance. (Ex. IIII.) He also filed a motion for extension of time to file a petition for review and requested the appointment of counsel. (Ex. JJJJ.) The trial court granted both motions, but denied Petitioner's motion for transcripts of his initial appearance. (Ex. KKKK; Ex. LLLL.) On December 11, 2007, Petitioner, through counsel, filed a petition for review in the court of appeals. (Ex. QQQQ.) The Court of Appeals summarily denied review. (Ex. RRRR.)

Petitioner then filed a state habeas petition in the trial court. (Ex. SSSS.) The trial court construed the petition as Petitioner's fifth Rule 32 proceeding and dismissed it because

1 the claims either were or could have been raised previously and because it did not raise a colorable claim of actual innocence. (Ex. TTTT.) By order filed April 24, 2009, the Arizona Court of Appeals directed the clerk of court not to accept Petitioner's petition for review for filing because it was untimely. (Ex. XXXX.)

## II. DISCUSSION

On June 10, 2009,[4] Jongeward filed a federal habeas corpus petition alleging four grounds for relief, with each ground containing sub-claims. Ground One is based on "actual innocence, equal protection, due process violation, 14th & 5th amendment violation & 4th." Ground Two alleges ineffective assistance of counsel and Fifth Amendment violations. Ground Three focuses on Deputy Doyle and alleges perjury, illegal search and seizure, and due process violations. Ground Four alleges due process violations in connection with his identification. (Doc. No. 1.) Respondents assert that each of these claims and their respective subparts is without merit. As discussed below, the Court agrees.

### A. AEDPA Standards

Under the Anti-terrorism and Effective Death Penalty Act of 1996 "(AEDPA"), a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). *See Williams v. Taylor*, 120 S.Ct. 1495 (2000). A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000). In determining whether a state court decision is contrary to federal law, the court must examine the last reasoned decision of a state court and the basis of the state court's judgment. *Packer v. Hill*, 277 F.3d 1092, 1101 (9th Cir. 2002). A state court's decision can

---

[4] Respondents waived a statute of limitations defense. (Doc. No. 26 at 20 n. 10.)

be an unreasonable application of federal law either (1) if it correctly identifies the governing legal principle but applies it to a new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

### B.    Ground One

In his first ground, Petitioner raises several sub-claims, each of which is addressed separately by the Respondents. The first is a claim that Deputy Doyle illegally stopped "someone on a bicycle" in violation of the Fourth Amendment. Assuming that "someone" was Petitioner and that he has standing to raise such a claim, it is nevertheless meritless. Under *Stone v. Powell*, 428 U.S. 465 (1976), if the state has provided a petitioner an opportunity for full and fair litigation of his Fourth Amendment claim, a federal court cannot grant habeas relief on the claim. *Id*. at 494. Here, Petitioner had and took advantage of the opportunity to litigate this claim in state court. His counsel filed a motion to suppress (Exs. L (motion), P (response), Q(reply)), an evidentiary hearing was held (Ex. V), and the trial court denied the motion (Ex. W). Petitioner does not argue that this opportunity to litigate his claim in state court was not full and fair and, therefore, the claim is barred from review.

Next, Petitioner complains that the State "destroyed or somehow lost" the COPS videotape. The government violates a defendant's due process rights when it fails to preserve evidence in a criminal case if (1) the evidence "might be expected to play a significant role in the suspect's defense," (2) the evidence has exculpatory value, (3) the exculpatory value was apparent before the evidence was destroyed, (4) the defendant was "unable to obtain comparable evidence by other reasonably available means, and (5) the government acted in bad faith. *California v. Trombetta*, 467 U.S. 479, 488-89 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Here, Petitioner presents no evidence that the State destroyed or lost the tape, much less that it acted in bad faith. Moreover, there is no showing other than his assertion, that the tape would show anything other than Petitioner with a bicycle on the side of the road. There is no basis for relief on this claim.

Petitioner next proclaims that, "No line-up was given!" The Arizona Court of

9

Appeals found that the lack of a line-up identification of Petitioner by Deputy Doyle did not violate Petitioner's due process rights, concluding that, "[a] defendant does not posses [sic] a constitutional or statutory right to a live lineup." (Ex. BBB, p. 8.) Petitioner provides no basis for finding that this decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). There is no clearly established precedent from the Supreme Court and the Ninth Circuit has held that a defendant "has no absolute or constitutional right to a lineup. The decision to conduct a lineup is solely within the discretion of the trial judge." *United States. Robertson*, 606 F.2d 853, 857 (9th Cir. 1979). This claim provides no basis for relief.

Petitioner's next assertion is that "Deputy Sheriff Doyle committed perjury numerous times . . ." In particular, Petitioner claims that Doyle lied about Petitioner's description. The prosecution's knowing use of perjured testimony violates a criminal defendant's due process rights. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008). However, mere inconsistencies in the evidence do not amount to the knowing use of false testimony by the prosecution. *See United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002). Rather, it is "within the province of the jury to resolve the disputed testimony." *Id*. Addressing this claim, the Arizona Court of Appeal correctly noted that the trial court did not curtail his Sixth Amendment right to cross-examine Doyle about any inconsistencies in his testimony," and found that "[i]t was the jury's function to decide Doyle's credibility and give his words appropriate weight." (Ex. BBB, pp. 9-10.) These considerations alone resolve this claim. As the state court concluded, it was the jury's function to decide whose testimony was to be believed. Therefore, this claim does not warrant relief.

Petitioner next asserts that he had "witness statements and witnesses that would testify but his lawyer did nothing about that." He does not identify the witnesses in the Petition, but a review of the record reveals two statements to which he might be referring. The first is dated April 28, 2004, and is signed by Chris Fox. The second is dated August 24, 2005, and is signed by Pamela Reidhead. (Both are attached to Ex. LLL.) As Respondents point out,

however, Petitioner's defense counsel, German Salazar, submitted his own affidavit stating that Petition never alleged that he was not the person stopped that evening or that he had alibi witnesses. In fact, counsel stated that Petitioner provided details about the stop in support of the motion to suppress. (Ex. MMM, attachment B.) Given these two versions of events leading-up to trial, this Court cannot fault the state decision denying Petitioner's claim and it therefore cannot justify habeas relief.

Petitioner final Ground One contention is that he is innocent of the charges against him. This claim is based on the assertions that precede it in Ground One, each of which has been resolved against him above. With this in mind, and assuming such a claim is available on non-capital habeas review, Petitioner comes nowhere close to satisfying the threshold for "a truly persuasive demonstration of 'actual innocence'" which would "necessarily be extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993).

**C.     Ground Two**

Ground Two of the Petition raises several allegations of ineffective assistance of counsel. The operative legal standard applicable to these claims is a familiar one, addressed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The standards enunciated there by the Court are applied unless there is other Supreme Court precedent directly on point. *See Wright v. Van Patten*, 128 S.Ct. 743, 746 (2008). Under *Strickland*, a petitioner must show both deficient performance and prejudice in order to establish that counsel's representation was ineffective. 466 U.S. at 687. In the context of habeas claims evaluated under § 2254(d)(1) standards, the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

The initial step in applying the AEDPA standards is to identify the state court decision that is appropriate for our review." *Barker v. Fleming,* 423 F.3d 1085, 1091 (9th Cir. 2005). To the extent that a Petitioner's federal habeas claims were not addressed in any reasoned state court decision, however, the Court conducts an independent review of the record to

11

1  determine whether the decision were contrary to, or involved an unreasonable application of
2  "clearly established" Supreme Court precedent. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167
3  (9th Cir. 2002). Here, the trial court was the only court to address the substance of
4  Petitioner's claims of ineffective assistance and concluded that they were not "colorable" and
5  denied them summarily. (Ex. OOO.) As there is no reasoned decision on Petitioner's claims
6  of ineffective assistance of counsel, the Court must review the claims without the benefit of
7  such analysis.

8  Petitioner initially claims that his counsel failed to adequately prepare his case.
Specifically, Petitioner alleges that evidence would have showed that the actual suspect was
using Petitioner's identification and the COPS video would have confirmed that he was not
the person stopped by Deputy Doyle. The reasonableness of the trial court's rejection of
these claims is supported by Petitioner's counsel's statements to the settlement judge at the
settlement conference held prior to trial. At that conference, Petitioner's trial counsel,
German Salazar, indicated on the record that he wanted his client to be aware of the
weakness of his arguments related to Petitioner's potential misidentification and the absence
of the COPS video. Salazar stated:

> There are only two other matters. I did investigate the whole thing. There were two kids in the car, in the patrol car at the time he was recording a video with a cop TV series. I wanted those witnesses. I wanted any evidence any having recordings which would be in some cases they are not available here. I hadn't been able to locate them. The recruiting officer is trying to assist me and we had a meeting in chambers with Judge Keppel. He indicated that he would not consider any Motion to Dismiss based on the non availability of those witnesses.
>
> And so I just want to put on the record my client should know that's not going to go anywhere in terms of being able to make an issue of dismissal on that, and the final thing is that any issue of missed identification, I looked at that and I don't believe those exists.

(Ex. S, pp. 13-14.) Based on the statements at the settlement conference, counsel was aware
of the issues raised by Petitioner and acted reasonably in investigating both the potential for
misidentification and the availability of the COPS video. Moreover, Petitioner's counsel,
after being accused by Petitioner of ineffective assistance, disclosed that he met with

12

Petitioner on several occasions and that Petitioner:

> provided detailed information about the location, date, time and circumstances surrounding the stop. He disagreed with significant facts about the stop including lightning [sic] condition, direction and speed of his travel and the sequence of events that occurred after the stop. He assisted me in preparing the pleadings and in conducting the evidentiary hearing. At this stage of the proceedings, [Petitioner] was actively involved in challenging the legality of the stop.

(Ex. MMM, attachment B.) Based on the information Petitioner's counsel provided at the settlement conference and when pressed by Petitioner's claims of deficient performance, it was clearly not unreasonable for the trial court to summarily reject these claims. In fact, it appears from what has been disclosed that Petitioner clearly was the individual detained by Deputy Doyle and that the COPS video would merely have confirmed this fact. What is also apparent is that Petitioner is seizing on the fortuitous non-production of the COPS video and arguing that if the video had been available, it would have shown the mystery suspect and Petitioner would have been acquitted at trial. It was not unreasonable for the trial court to reject this revisionist rubbish.

Petitioner next argues that counsel "didn't follow-up on witnesses" for the Petitioner. This argument was addressed in relation to Ground One and is meritless for the reasons discussed above, namely, that Petitioner did not disclose these alibi witnesses to his counsel.

Petitioner next sinks to lower depths and "questions the mind-set of his trial lawyer." He asserts that his lawyer's "wife was dying of cancer during trial which affected his mind-set." Petitioner further alleges that:

> when [Petitioner] sent an article (obituary) to the courts to argue that fact, it was after that when his trial lawyer violated the lawyer client confidentiality agreement. Whether this was an act of vengeance or not is something for the court to consider. The sworn affidavit sent to the judge by the trail lawyer ruins any chance that the [Petitioner] would have for his appeal. This is an ethics violation and taints the objectiveness of any Rule 32 proceeding. A judge is very unlikely to rule for a defendant when defendant's lawyer basically said his client is guilty.

*Petition,* p. 7. As a side-note, it is interesting that Petitioner never asserts that anything his lawyer stated was untruthful. In any case, this claim is utterly meritless. First, Petitioner fails to specifically identify any deficiency that resulted from his trial counsel's "mind-set."

13

If he is referring the alleged shortcomings described elsewhere in Ground Two, those have been addressed and resolved against Petitioner. Second, in *Laughner v. United States*, 373 F.2d 326 (9th Cir. 1967), the Ninth Circuit forcefully rejected claims of this nature:

> We are met first with the remarkable contention that appellant's rights were infringed upon by reason of the fact that the attorney he charged with failure to represent him adequately at his arraignment and sentencing was called as a witness by the government and permitted by the court to testify in this post-conviction proceeding with respect to the factual issues raised by appellant's motion. Having demanded and obtained a factual judicial inquiry into his claim that the attorney appointed to render him the assistance of counsel for his defense failed to discharge his responsibilities properly, appellant now proposes to invoke the privilege accorded confidential communications between an attorney and his client to eliminate the one source of evidence likely to contradict his allegations. We are unable to subscribe to this proposition. The privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that the client thereby waives the privilege as to all communications relevant to that issue.

*Id.* at 327; *see also Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." (citations omitted)). Thus, Petitioner's counsel appropriately disclosed privileged material to address the claims alleged against him by Petitioner and Petitioner has no grounds upon which to raise a legitimate objection.

**D.  Ground Three**

As Respondents note, Ground Three of the petition covers much of the same ground as that addressed in relation to Grounds One and Two. He raises again issues about his identification by Deputy Doyle and the lack of a line-up and other evidence. These issues have been resolved against him. Petitioner also offers his interpretation of the evidence and argues that the evidence does not support his conviction. As stated previously, it is "within the province of the jury to resolve the disputed testimony." *See United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002). In this case, the disputed facts were resolved against the Petitioner and he has not identified any legal basis to question that outcome.

Petitioner does, however, add more to his claim that Deputy Doyle committed perjury under oath. The additional allegation is that Deputy Doyle "changed his story to support [the] basis for [a] legal stop." As Respondents note, the variation in Deputy Doyle's testimony is slight and does not undermine the basis for the stop. What varied in the testimony was Doyle's recollection of the order of events on the night in question. The variation, which is apparent only with a very close reading of Deputy Doyle's transcribed testimony, is in relation to what he saw first: Petitioner and the bike or the reaction of the vehicle traveling in front of the Deputy to Petitioner and his bike crossing the road. (*Compare* Ex. E at p. 4 *with* Ex. V at pp. 4-5 and Ex. Z at pp. 32-34.) In light of the minor variation in Deputy Doyle's testimony, the state court's rejection of this claim was reasonable. To the extent this argument even raises a substantial variation in the facts, it was within the jury's province to decide what to believe. *Geston*, 299 F.3d at 1135.

### E. Ground Four

As Respondents note, Ground Four raises only one identifiable argument that was not raised in any of the first three grounds of the Petition. The new claim is that Petitioner's right to a fair trial was violated because "jury selection did not conform with [the] U.S. Constitution and Az. Constitution. It was not selected by a cross section of the county." The claim appears to raise the same issues considered in *In re: the Matter of the Jury Selection Process in maricopa County*, 220 Ariz. 526, 207 P.3d 779 (App. 2009) (dismissing consolidated appeals from the trial court's ruling that upheld the regionalized selection process for lack of jurisdiction). Petitioner does not offer any factual basis for this claim in the instant petition, but it was raised in his third post- conviction application filed in state court. (Ex. CCCC.) Addressing the claim, the trial court stated that Petitioner

> attaches as support for the first claim a newspaper article concerning the court's selection process for summoning jurors . . . . Pursuant to Rule 32.2.(b), Arizona Rules of Criminal Procedure, [Petitioner] must provide meritorious reasons substantiating his claims in order to be allowed to pursue untimely Rule 32 relief.

(Ex. DDDD.) As was the case in state court, Petitioner has failed to provide any meritorious reason justifying this claim.

15

A criminal defendant is entitled pursuant to Sixth Amendment guaranties, to a fair and impartial jury pool composed of a cross-section of the community. *Holland v. Illinois*, 493 U.S. 474, 476 (1979). In *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court held that a claimant, to establish a prima facie violation of the fair cross-section requirement, was required to show that (1) the group alleged to be excluded is a "distinctive" group in the community, *see, e.g., United States v. Cannady*, 54 F.3d 544, 547 (9th Cir. 1995) (African - Americans, Hispanics, and Asians are distinct groups); (2) the group was not fairly represented in the venire from which the jury was chosen, *see, e.g., United States v. Nelson*, 137 F.3d 1094, 1101 (9th Cir. 1998); and (3) the under representation resulted from a systematic exclusion of the group in the jury selection process, *see, e.g., United States v. Miller*, 771 F.2d 1219, 1228 (9th Cri. 1985). *Duren,* 439 U.S. at 367.

Petitioner has satisfied none of the three prongs of the *Duren* test. Petitioner, before the state court, asserted that the jury pool in his case "more probably represented the 'more <u>conservative</u> population' of the Mesa area and near Mesa Communities which are Predominately Mormon Aristocrates . . . ." (Ex. DDDD, p. 4.) From Petitioner's surmise, the Court must infer what group is alleged to have been excluded, and can only conclude it was any individual who was not a Mormon aristocrat. Whatever that group might be, Petitioner fails to give the Court any idea of how it would be a distinct group under *Cannady*. Petitioner similarly fails to provide any evidence that the group was not fairly represented in the venire from which Petitioner's jury was chosen. Finally, Petitioner fails to explain how this purportedly distinct group was systematically excluded. There is simply no basis for a court to find merit in this claim and the trial court's decision was therefore reasonable and must be upheld.

## **RECOMMENDATION**

Based on the foregoing, the Magistrate Judge recommends the District Court enter an order DISMISSING the Petition for Writ of Habeas Corpus.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and

Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CV-08-0562-PHX-GMS**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 31st day of August, 2010.

*Jacqueline Marshall*
Jacqueline Marshall
United States Magistrate Judge